NO. 07-08-0485-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 23, 2009
_____

THE STATE OF TEXAS,

Appellant

v.

JOE ELLIS PATTERSON,

Appellee
_____

FROM THE COUNTY COURT AT LAW NO. 2 OF POTTER COUNTY;

NO. 122447-2; HON. PAMELA SIRMON, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

The State of Texas appeals from the trial court's order granting Joe Ellis Patterson's motion to suppress evidence. Patterson was indicted for possessing a controlled substance (marijuana) in a drug free zone. The State argues that the trial court erred in granting the motion because Patterson's detention was based on either a reasonable belief or probable cause to conclude that he had committed a traffic violation. We reverse the trial court's order.

*Background*

On July 29, 2008, police officer Mike Sanchez observed Patterson walking westbound on Southwest Fourth Avenue on the road's surface. There were no sidewalks adjacent to that part of the street. Rather than walk on the left side of the surface to face oncoming traffic, Patterson walked on the right side with the traffic to his back. Believing this to be a violation of an Amarillo municipal ordinance, Sanchez stopped Patterson and asked for identification. Patterson had none on his person. The officer decided to place Patterson in his squad car while he attempted to determine his identity and subjected him to a pat-down search before doing so. Additionally, Patterson consented to the search of his pockets.[1] The latter revealed the presence of marijuana.

Patterson moved to suppress discovery of the contraband by contending that his initial detention was unlawful. That is, he believed that the officer lacked both reasonable suspicion and probable cause to stop him as he walked on the street. This allegedly was so because the ordinance the officer relied upon to initiate the stop was inapplicable. The trial court agreed.

*Standard of Review*

The standard by which we review the trial court's ruling on a motion to suppress is set forth in *Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005). Although we afford deference to the trial court's interpretation of historical facts, we do not give the same deference to its application or interpretation of the law. *Id.* at 493.

---

[1] We do not address whether Patterson's consent to search, which no one attacked on appeal, rendered moot the validity of the stop.

*Analysis*

Sanchez testified that he stopped Patterson for violating an Amarillo municipal ordinance prohibiting one from walking in the street with his back to traffic. The ordinance in dispute stated that: "Where sidewalks are not provided any pedestrian walking along and upon a highway shall when possible walk only on the left side of the roadway or its shoulder facing approaching traffic." AMARILLO, TEX., MUN. CODE ch. 16-3 , art. VII, §16-3-313(b) (2006). Additionally, the term "highway" was defined in the ordinance as: "A highway divided into two (2) roadways by leaving an intervening space, or by a physical barrier, or by a clearly indicated dividing section between the two (2) roadways." *Id.* art. VII, §16-3-2 (1988). Because Southwest Fourth Avenue did not have any such intervening space, physical barrier, or clearly indicated divider, the trial court determined that the traffic law relied on by the officer was inapplicable and, therefore, he had no legitimate basis for stopping Patterson.[2]

In ruling as it did, the trial court implicitly rejected the State's contention that, while the local ordinance may not apply, a Texas statute regulating the same matter did. The Texas statute not only made it illegal to walk atop a highway's surface with one's back to traffic when no sidewalk is available, TEX. TRANSP. CODE ANN. §§552.006(a)-(b) (Vernon Supp. 2009), but also defined "highway" differently. Under the state code, "highway" meant "the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular travel." *Id.* §541.302(5) (Vernon 1999). Unlike the local

_____

[2]*See generally Goudeau v. State,* 209 S.W.3d 713, 716 (Tex.App.–Houston [14th Dist.] 2006, no pet.); *United States v. Delfin-Colina,* 464 F.3d 392, 399 (3rd Cir. 2006); *United States v. Miller,* 146 F.3d 274, 279 (5th Cir. 1998) (addressing effect of mistake of law on officer's reasonable suspicion).

3

ordinance, the state definition says nothing about a need for the presence of an intervening space, physical barrier, or clearly indicated divider. So, while it may be that Patterson did not violate the ordinance, the officer purportedly had reasonable suspicion or probable cause to believe that the Transportation Code provision was violated, and, therefore, he had basis to undertake the detention. We agree with the prosecution.

It has long been true that a traffic violation can constitute a reasonable basis for a detention. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Indeed, reasonable suspicion that such a violation occurred permits an officer to stop the suspect. *Bynes v. State*, No. 07-08-0207-CR, 2009 WL 1107987, at *2 (Tex. App.–Amarillo April 24, 2009, no pet.) (mem. op., not designated for publication); *see Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (holding that reasonable suspicion does not require absolute certainty that an offense was committed). And, because the presence of reasonable suspicion is an objective standard, the subjective intent of the police officer undertaking the stop is irrelevant. *Garcia v. State,* 43 S.W.3d at 530. In other words, the subjective reasons uttered by the officer to legitimize the stop have no bearing on the outcome if the totality of the circumstances nonetheless would lead a police officer to reasonably suspect that crime is afoot. *Id.* at 530; *accord, Singleton v. State,* 91 S.W.3d 342, 347 (Tex. App.–Texarkana 2002, no pet.) (noting that an objectively valid stop can be upheld even though it was made for the wrong reason); *Russ v. State,* No. 02-05-270-CR, 2006 WL 668729, at *3 n.4 (Tex. App.–Fort Worth March 16, 2006, pet. ref'd) (mem. op., not designated for publication) (noting that the trial court need not limit its review to the violations the officer cited in executing the stop); *Arriaga v. State,* No. 03-

03-00097-CR, 2003 WL 22023577, at *2 (Tex. App.–Austin August 29, 2003, no pet.) (mem. op., not designated for publication) (stating the same).

Here, the trial court expressly found that 1) Patterson was "walking on the right side of the roadway facing away from approaching traffic" and 2) there were "no sidewalks, lane markings, or curbs on [the] portion" of the street. Given that §§552.006(a)-(b) of the Texas Transportation Code mandated that where there was no sidewalk, "a pedestrian walking along and on a highway shall if possible walk on . . . the left side of the roadway" or on "the shoulder . . . facing oncoming traffic" and Patterson did neither, circumstances existed which allowed an officer to reasonably conclude that Patterson had committed a traffic offense. It did not matter that the officer at bar initially indicated that he based the stop upon what ultimately appeared to be an inapplicable municipal ordinance. Again, this is so because the totality of the circumstances was enough to create both probable cause and reasonable suspicion to believe that §552.006 of the Transportation Code had been violated.

To the extent Patterson suggests that Amarillo's ordinance superceded §552.006, he is mistaken. Our legislature declared that a "local authority may not enact or enforce an ordinance or rule that conflicts with" subtitle C of title 7 of the Transportation Code "unless expressly authorized by" that same subtitle. TEX. TRANSP. CODE ANN. §542.201 (Vernon 1999). A municipality, such as the City of Amarillo, falls within the umbrella of a "local authority." *Id.* §541.002(3)(A). Furthermore, §552.006 appears under subtitle C of title 7 of the Transportation Code. So, §542.201 controls at bar.

Also, Amarillo's definition of "highway" can be read as conflicting with the definition of the same term mentioned in §541.302(5) of the Transportation Code. That is, while the

5

latter prohibits walking with one's back to traffic, the former does not so long as there is no intervening space, physical barrier, or clearly marked divider on the roadway. This leads us to conclude, especially since we have been cited to nothing in subtitle C of title 7 of the Transportation Code indicating otherwise, that Amarillo's provision must give way.[3]

Accordingly, the trial court erred in granting the motion to suppress. So, we reverse that order and remand the cause for further proceedings.

Brian Quinn
Chief Justice

Publish.

---

[3]We do not ignore Patterson's contention that §552.006 applies only to roadways in which the boundaries are marked, and, because the street in question had no curbs or lane markings, there were no boundary lines. Nothing in the plain language of the statute indicates that curbs or lane markings are required for a road to be deemed a highway, and we opt not to read in what the legislature left out.