**Affirmed and Opinion filed April 12, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00259-CR

---

### JORDAN DWAYNE NICHOLS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Court at Law No. 4
Brazoria County, Texas
Trial Court Cause No. 194143**

---

## O P I N I O N

As part of a plea agreement, appellant Jordan Dwayne Nichols pleaded guilty to the misdemeanor offense of possession of drug paraphernalia. More than two years later, appellant filed a post-conviction writ of habeas corpus contending that his guilty plea was involuntary because trial counsel rendered ineffective assistance. Appellant's post-conviction writ was denied, and appellant appealed. We affirm.

## BACKGROUND

A Pearland police officer stopped appellant after appellant failed to signal when exiting a grocery store parking lot on May 7, 2012.  The officer approached appellant's vehicle and detected a strong odor of marijuana.  When the officer asked appellant if there was any marijuana in the vehicle, appellant responded that there was marijuana in the center console.

Appellant was charged with the Class B misdemeanor offense of possession of marijuana.  *See* Tex. Health & Safety Code Ann. § 481.121(b)(1) (Vernon 2010).  The State offered to reduce the offense to a Class C misdemeanor charge for possession of drug paraphernalia if appellant pleaded guilty.  *See id.* § 481.125(d) (Vernon 2010).  Appellant accepted the State's offer and pleaded guilty on August 23, 2012; punishment was assessed at a fine of $500.  Appellant also completed a drug awareness class before punishment was assessed.

Appellant filed a post-conviction writ of habeas corpus on September 16, 2014.  *See* Tex. Code Crim. Proc. Ann. art. 11.09 (Vernon 2015).  Appellant alleged that his plea was involuntary based on the incomplete or inadequate advice of counsel.  After a hearing, the trial court denied appellant's writ on February 27, 2015.  The trial court signed findings of fact and conclusions of law on June 23, 2015.  Appellant timely appealed.

## ANALYSIS

In two issues, appellant contends that his guilty plea was involuntary because it resulted from trial counsel's erroneous advice and failure to perform an adequate legal investigation.  Specifically, appellant contends that trial counsel failed to recognize a key legal issue concerning the legality of the traffic stop; as a

2

result, appellant contends, counsel erroneously failed to advise him not to pursue a motion to suppress evidence obtained from the search of appellant's car.

A guilty plea resulting from ineffective assistance of counsel is not knowing and voluntary. *Ex parte Niswanger*, 335 S.W.3d 611, 614-15 (Tex. Crim. App. 2011), *abrogated in part on other grounds by Cornwell v. State*, 471 S.W.3d 458 (Tex. Crim. App. 2015). Competent advice requires that an attorney conduct independent legal and factual investigations sufficient to provide a firm command of the case and the relationship between the facts and each element of the charged offense. *Id.* at 615. To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

To satisfy the first prong, appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* A defendant must overcome the presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim. *Id.*

To satisfy the second prong, appellant must show that there is a reasonable probability — or a probability sufficient to undermine confidence in the outcome — that the result of the proceeding would have been different but for counsel's unprofessional errors. *Lopez*, 343 S.W.3d at 142. For claims related to the

entering of a plea, the appellant shows prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Niswanger*, 335 S.W.3d at 615. And, where counsel's alleged ineffectiveness is premised on counsel's failure to pursue a motion to suppress, the appellant must prove that the motion to suppress would have been granted. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

We consider the totality of the circumstances in determining whether counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Failure to satisfy either prong of the *Strickland* test defeats an ineffective-assistance claim. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

The only potential reason identified in the police officer's report for appellant's traffic stop was that the officer observed appellant "exit the [grocery store] parking lot southbound onto Reid Road without signaling."

The Texas Transportation Code requires an operator to use a turn signal to indicate an intention to turn, change lanes, or start from a parked position when a vehicle is being operated on a highway.[1] *See* Tex. Transp. Code Ann. § 545.104 (Vernon 2011). In *State v. Ballman*, 157 S.W.3d 65 (Tex. App.—Fort Worth 2004, pet. ref'd), the court of appeals analyzed whether section 545.104 applied to a turn made from a private driveway onto a public highway. The court of appeals concluded that section 545.104's signaling requirement does not apply to vehicles turning from a private parking lot onto a highway. *Id.* at 70. Because the court of appeals concluded that the appellant in *Ballman* was not required under section

---

[1] A highway is defined as "the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular travel." Tex. Transp. Code Ann. § 541.302(5) (Vernon 2011). Appellant does not dispute that the road he turned onto from the grocery store parking lot was a highway under the statute.

4

545.104 to signal before turning onto the highway from the private parking lot, the court further concluded that the police officer who stopped the appellant for failing to signal "did not observe a traffic violation under section 545.104 of the transportation code and therefore had no probable cause to stop or arrest appellant." *Id.*

Appellant contends, based on Texas Transportation Code section 545.104 and *Ballman*, that the police officer who stopped appellant did not have probable cause or reasonable suspicion for the traffic stop. Appellant argues that, had his trial counsel conducted an appropriate pre-trial legal investigation, his trial counsel would have advised him to pursue a motion to suppress the evidence and not plead guilty to the lesser offense.

The State called appellant's trial counsel as a witness during the hearing on appellant's writ of habeas corpus. Appellant's trial counsel testified that during his investigation of appellant's case he reviewed the relevant Texas Transportation Code section. He also testified that he "came across [case law] that indicated that it's not a requirement per the Texas Transportation Code to signal your intent to turn after exiting a private drive or a parking lot." However, appellant's trial counsel testified that he also discovered a potentially relevant section of the City of Pearland municipal code:

> Sec. 29-189. – When turn signals required.
>
> No person shall turn any vehicle without first giving an appropriate signal in the event any other traffic may be affected by such movement. Such signal of intention to turn right or left, when required, shall be given continuously during not less than the last one hundred (100) feet traveled by the driver of such vehicle before turning.

*See* Code of Ordinances, City of Pearland, Texas, § 29-189 (2004), https://www.municode.com/library/tx/pearland/codes/code_of_ordinances.

5

Appellant's trial counsel testified that, based on the Pearland municipal ordinance, he believed there to be some uncertainty whether a motion to suppress would be granted. Moreover, the State informed appellant's trial counsel that the plea offer would be rescinded if appellant pursued a motion to suppress, and that no further plea offers would be made. Accordingly, appellant's trial counsel testified that, based on his research and his interpretation of the statutes, he advised appellant that he believed it to be in appellant's best interest to accept the State's plea bargain of the reduced Class C misdemeanor offense.

Appellant contends that trial counsel's advice was objectively deficient because counsel's reliance on the Pearland municipal code was misplaced. Texas Transportation Code section 542.201 provides that "[a] local authority may not enact or enforce an ordinance or rule that conflicts with [Title 7, Subtitle C of the Transportation Code] unless expressly authorized by this subtitle. However, a local authority may regulate traffic in a manner that does not conflict with this subtitle." *See* Tex. Transp. Code Ann. § 542.201 (Vernon 2011). Relying on section 542.201 and *State v. Patterson*, 291 S.W.3d 121 (Tex. App.—Amarillo 2009, no pet.), appellant contends that the Pearland municipal ordinance impermissibly conflicts with the Texas Transportation Code.

In *Patterson*, the appellant was stopped for violating an Amarillo municipal ordinance prohibiting an individual from walking along a highway with his back to traffic. 291 S.W.3d at 122. The Amarillo municipal code additionally defined "highway" as a roadway divided into two roadways "by leaving an intervening space, or by a physical barrier, or by a clearly indicated dividing section between the two (2) roadways." *Id.* Finding that the roadway where the appellant was stopped was not divided by an intervening space, physical barrier, or clearly indicated divider, the trial court concluded that the traffic law relied on by the

6

officer was inapplicable and the officer therefore had no legitimate basis for stopping the appellant. *Id.*

The Amarillo Court of Appeals reversed, concluding that "Amarillo's definition of 'highway' can be read as conflicting with the definition of the same term mentioned in § 541.302(5) of the Transportation Code." *Id.* at 124. The court noted that, while the Texas Transportation Code prohibits walking with one's back to traffic along a highway, the Amarillo municipal code does not so long as there is no intervening space, physical barrier, or clearly marked divider on the roadway. *Id.* Accordingly, the court of appeals concluded that, to the extent the municipal ordinance allowed an action prohibited by the Texas Transportation Code, the municipal ordinance impermissibly conflicted with the Texas Transportation Code. *See id.*

*Patterson* is distinguishable from the situation before us. The Pearland ordinance at issue requires drivers to signal at least 100 feet before turning; appears to apply to all roadways; and makes no distinction between drivers already on a roadway and those entering a roadway.[2] *See* Code of Ordinances, City of Pearland, Texas, § 29-189 (2004), https://www.municode.com/library/tx/pearland/codes/ code_of_ordinances. Unlike the Amarillo ordinance at issue in *Patterson*, the Pearland municipal ordinance is more restrictive than the Texas Transportation Code — not more lenient. The Pearland ordinance does not attempt to make legal

---

[2] Appellant contends in a post-submission brief that the Pearland ordinance requires drivers to signal only if other traffic may be affected by such movement, and that "traffic," as defined by the statute, includes only vehicles using a publicly maintained street. Appellant's inference appears to be that a vehicle on private property cannot affect traffic on a publicly maintained street. We disagree. A vehicle turning from private property onto a publicly maintained street can affect traffic on that street. The Pearland ordinance requires only that the vehicle's turn may affect traffic on the publicly maintained street — not that the turning vehicle itself be on the publicly maintained street. *See* Code of Ordinances, City of Pearland, Texas, § 29-189 (2004), https://www.municode.com/library/tx/pearland/codes/code_of_ordinances.

7

something the Texas legislature has explicitly restricted by statute. Accordingly, we conclude the Pearland ordinance does not conflict with Texas Transportation Code section 545.104, but instead constitutes a permissible further regulation of traffic as allowed by section 542.201.

Having concluded that the Pearland municipal ordinance does not conflict with the Transportation Code, we must determine whether trial counsel's advice that appellant accept the State's plea bargain was deficient because it fell below an objective standard of reasonableness. Considering the uncertainty surrounding the applicable law and the potential negative consequences of appellant going forward with a speculative outcome on a motion to suppress, we conclude that appellant has not satisfied *Strickland*'s first prong.

The State informed appellant's trial counsel that its plea bargain would be rescinded if appellant pursued a motion to suppress. Accordingly, appellant's trial counsel had to make a judgment call regarding the relative risks of foregoing a take-it-or-leave-it plea bargain versus moving forward with a motion to suppress, the outcome of which was uncertain.

Even assuming for the sake of argument that the Pearland ordinance impermissibly conflicted with the Texas Transportation Code, the success of appellant's proposed motion to suppress would have turned on a determination that the only basis for the police officer's traffic stop of appellant was appellant's failure to signal when turning from the parking lot. As noted above, the police officer's report indicates that appellant's traffic stop was premised on appellant leaving the grocery store parking lot without signaling. However, it is possible that at a hearing on the motion to suppress the police officer would have testified to additional, valid reasons for the traffic stop not identified in the officer's report,

8

thereby negating appellant's argument that the motion would succeed under the Texas Transportation Code and *Ballman*.

As we have discussed above, however, there is an argument to be made that appellant's unsignaled turn onto the highway itself provided reasonable suspicion for appellant's traffic stop. Unlike in *Ballman* where the court of appeals concluded that Texas Transportation Code section 545.104 does not apply to vehicles turning from private parking lots onto highways, the State here contended that, even if a signal was not required under the Texas Transportation Code, it was nevertheless required under the Pearland's Code of Ordinances. *See Ballman*, 157 S.W.3d at 70, 70 n.2 (specifically noting no contention was made that the unsignaled turn constituted a violation of the Fort Worth Code). Appellant's trial counsel testified at the writ hearing that he was unaware of any case law interpreting or applying the Pearland ordinance. We have not found any, nor has appellant directed us to any such case law. Appellant's trial counsel could not have known how the trial court would interpret the Pearland municipal ordinance, and therefore could not have known with any reasonable degree of certainty how the trial court would have ruled on a motion to suppress. The trial court made a finding that "[trial counsel] recognized that the Court's interpretation of the Pearland Municipal Code could lead to a denial of the motion to suppress."

Based on the record before us, we cannot say that trial counsel's legal investigation was inadequate. Appellant's trial counsel testified that he considered the relevant sections of the Texas Transportation Code, the relevant case law, and the Pearland municipal ordinance in advising appellant to accept the State's plea bargain. The trial court found trial counsel's testimony to be credible.

Nor can we conclude that trial counsel's advice to accept the plea bargain was unreasonable considering the unsettled state of the law regarding the interplay

between the Texas Transportation Code and the Pearland's Code of Ordinances; the uncertainty of the applicability of the Pearland municipal ordinance to the case at hand; and that appellant's pursuit of a motion to suppress would have resulted in the State's withdrawal of its favorable plea bargain. *See, e.g.*, *Ex parte Smith*, 296 S.W.3d 78, 81 (Tex. Crim. App. 2009) (where law was unclear regarding whether appellant's deferred adjudication constituted conviction under unlawful possession of firearm statute and appellant was offered generous plea bargain, court concluded that counsel's advice to plead guilty was not ineffective assistance).

Finally, we reject appellant's argument that his plea was involuntary based on trial counsel's alleged statements to appellant and appellant's mother that no conviction would appear on appellant's record if appellant accepted the State's plea bargain.[3] Contrary to appellant's assertion, trial counsel testified that he informed appellant there would be a conviction — just not a conviction for the originally charged offense of possession of marijuana:

> [TRIAL COUNSEL:] Well, I told him that it would go on his record in terms of it being a Class C, that it never goes away but that that would prevent the original charge of Class B from being a conviction. The arrest was still there. Nothing we could do about that. But in terms of the conviction itself, it would not result in a Class B misdemeanor being on his record with all the attendant other collateral consequences, driver's license suspensions and whatnot.

The trial court sits as the sole judge of credibility and demeanor of witnesses in a habeas proceeding brought under article 11.09 of the Texas Code of Criminal Procedure, and we may not disturb its rulings absent a clear abuse of discretion.

---

[3] To the extent appellant's brief can be read to include an argument that his guilty plea was involuntary because he was not informed of the option of deferred adjudication, we reject that argument as well. Trial counsel testified, and the trial court made a finding, that trial counsel discussed deferred adjudication with appellant. No evidence was presented that deferred adjudication had been offered by the State.

*Ex parte Martinez*, 451 S.W.3d 852, 856 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We defer to the trial court's findings of fact that are supported by the record. *Id.* In its findings of fact, the trial court found that "[trial counsel] did not tell [appellant] that the Class C conviction would come off his record." The trial court further found trial counsel's testimony to be credible, and found the testimony of appellant and appellant's mother was not credible. We defer to the trial court's findings, and do not conclude that the trial court abused its discretion. Accordingly, we will not disturb its ruling. *See id.*

Based on the foregoing, we find no merit in appellant's ineffective-assistance-of-counsel claim, and that appellant's guilty plea was therefore knowingly and voluntarily made. Accordingly, we overrule appellant's issues.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's denial of appellant's post-conviction writ of habeas corpus.

/s/    William J. Boyce
       Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise.
Publish — Tex. R. App. P. 47.2(b).